# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK MAIN OFFICE (SYRACUSE)

| | |
|---|---|
| RACHEL COLANGELO and KATHLEEN PARADOWSKI, individually and on behalf of a class of similarly situated individuals,<br><br>   Plaintiffs,<br><br>v.<br><br>CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP,<br><br>   Defendants. | CIVIL ACTION NO.: 6:18-cv-01228-LEK-ML |

## DEFENDANTS CHAMPION PETFOODS USA INC. AND CHAMPION PETFOODS LP'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

GREENBERG TRAURIG, LLP
David A. Coulson, Esq. (*pro hac vice*)
Jared R. Kessler, Esq. (*pro hac vice*)
Robert S. Galbo, Esq. (*pro hac vice*)
Elisa H. Baca, Esq. (*pro hac vice*)
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: 305-579-0754
Email: coulsond@gtlaw.com
   kesslerj@gtlaw.com
   galbor@gtlaw.com
   bacae@gtlaw.com

Rick L. Shackelford, Esq. (*pro hac vice*)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 310-586-3878
Email: shackelfordr@gtlaw.com

Cynthia Neidl, Esq. (513737)
54 State Street
Albany, NY 12207
Telephone: 518-689-1435
Email: neidlc@gtlaw.com

*Attorneys for Defendants Champion Petfoods USA Inc. and Champion Petfoods LP*

i

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    PROCEDURAL HISTORY ................................................................................. 2

III.   SUMMARY OF PLAINTIFF'S REMAINING CLAIMS ................................. 3

IV.    STATEMENT OF UNDISPUTED MATERIAL FACTS ................................. 3

       A.    Background as to Champion ................................................................... 3

       B.    Plaintiff's Purchases of Champion Dog Food ....................................... 4

       C.    Statements on Champion's Dog Food Packaging ................................. 5

       D.    The Levels of Heavy Metals in Champion Dog Food are Not Unsafe ................. 8

       E.    BPA is Widely Present in the Environment, Not Uncommon in Dog Food,
             and the Levels Found in Champion's Dog Food Would Not Harm a Dog ........... 9

V.     ARGUMENT ..................................................................................................... 10

       A.    Summary Judgment Should Be Entered on Counts I-IV Based on Alleged
             Misrepresentations ............................................................................... 10

             1.    The Phrase "Biologically Appropriate" is Puffery and Otherwise
                   Non-Actionable. ......................................................................... 12

             2.    Even if "Biologically Appropriate" was Actionable, Plaintiff's
                   Claim Still Fails Because it is Not False or Misleading Due to the
                   Presence of Heavy Metals or BPA ............................................ 13

             3.    Champion's Statement that Its Dog Food Contains "Fresh"
                   Ingredients is Not Misleading ................................................... 16

             4.    Champion's Statements that Its Dog Food Is Made With
                   "Regional" Ingredients are Not Untrue or Misleading ............. 18

             5.    The Statement "Delivering Nutrients Naturally" is Not False or
                   Misleading ................................................................................. 20

       B.    Summary Judgment Should Be Entered on Counts I and V Based on
             Alleged Omissions ............................................................................... 21

VI.    CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*,
  731 F.2d 112 (2d Cir. 1984)..................................................................................22

*Bank of New York v. Realty Grp. Consultants*,
  186 A.D.2d 618 (1st Dept 1992)...........................................................................13

*Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*,
  57 F.3d 146 (2d Cir. 1995)....................................................................................25

*Boone v. Codispoti & Assocs. P.C.*,
  No. 15 Civ. 01391, 2015 WL 5853843 (S.D.N.Y. October 7, 2015) ....................21

*Crigger v. Fahnestock & Co.*,
  443 F.3d 230 (2d Cir. 2006)..................................................................................21

*Daniel v. Mondelez Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...................................................................11

*Devane v. L'Oreal USA, Inc.*,
  No. 19 CIV. 4362, 2020 WL 5518484 (S.D.N.Y. Sept. 14, 2020).........................11

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)..................................................................................12

*In re Fyre Festival Litig.*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019)....................................................................22

*Gander Mountain Co. v. Islip U-Slip LLC*,
  923 F. Supp. 2d 351 (N.D.N.Y. 2013), *aff'd*, 561 F. App'x 48 (2d Cir. 2014) ......22

*Gomez-Jimenez v. New York Law Sch.*,
  943 N.Y.S.2d 834 (Sup. Ct.), *aff'd*, 103 A.D.3d 13 (1st Dept. 2012) ...................21

*Hogan Willig, PLLC v. Kahn*,
  145 A.D.3d 1619 (4th Dept 2016) .........................................................................24

*Jacobs v. Lewis*,
  261 A.D.2d 127 (1st Dept. 1999)...........................................................................13

*Jana L. v. W. 129th St. Realty Corp.*,
  22 A.D.3d 274 (1st Dept. 2005)........................................................................22, 23

*Jessani v. Monini N. Am., Inc.*,
  744 F. App'x 18 (2d Cir. 2018) ..............................................................................11

*Kennedy v. Mondelēz Glob. LLC*,
  No. 19-CV-302-ENV-SJB, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) .............19

*Lipton v. Nature Co.*,
  71 F.3d 464 (2d Cir. 1995)....................................................................................12

*Loeb v. Champion Petfoods USA Inc.*,
  359 F. Supp. 3d 597 (E.D. Wis. 2019)...............................................................................15

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.*,
  457 F. Supp. 3d 207 (E.D.N.Y. 2020) ................................................................................12

*Newman v. RCN Telecom Servs., Inc.*,
  238 F.R.D. 57 (S.D.N.Y. 2006) .........................................................................................21

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. 2019)...........................................................................20, 23

*Reitman v. Champion Petfoods USA Inc.*,
  No. CV181736DOCJPRX, 2018 WL 4945645 (C.D. Cal. Oct. 10, 2018) ............................2

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
  68 F. 3d 1478 (2d Cir. 1995).............................................................................................22

*Sarr v. BEF Foods, Inc.*,
  No. 18-cv-6409, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ......................................11, 17

*Simpson v. Champion Petfoods USA, Inc.*,
  397 F. Supp. 3d 952 (E.D. Ky. 2019) ................................................................................22

*Sirohi v. Lee*,
  222 A.D.2d 222 (1st Dept. 1995)........................................................................................13

*In re Sling Media Slingbox Advert. Litig.*,
  202 F. Supp. 3d 352 (S.D.N.Y. 2016)...........................................................................21, 24

*Song v. Champion Petfoods USA, Inc.*,
  No. 18-CV-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020).................................. *passim*

*Stewart v. Riviana Foods Inc.*,
  No. 16-CV-6157 (NSR), 2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ..............................12

*Sweringen v. N.Y. State Dispute Resolution Ass'n*,
  No. 1:05-CV-428, 2010 WL 572204 (N.D.N.Y. Feb. 16, 2010)...........................................20

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007)..............................................................................................12

*Verzani v. Costco Wholesale Corp.*,
  No. 09 CIV 2117 CM, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*,
  432 F. App'x 29 (2d Cir. 2011) .........................................................................................17

*Wing v. Albank Finical Corp.*,
  No. 98-CV-461, 2000 WL 516525 (N.D.N.Y. Mar. 8, 2000) (Kahn, J.) ..............................10

*Weaver v. Champion Petfoods USA Inc.*,
  No. 18-CV-1996-JPS, 2019 WL 2774139 (E.D. Wis. July 1, 2019)………………. .15, 21, 24

*Weaver v. Champion Petfoods USA Inc.*,
  471 F. Supp. 3d 876 (E.D. Wis. 2020)……………………………………….…….…*passim*

## I.        INTRODUCTION

Plaintiff Kathleen Paradowski ("Plaintiff") is pursuing the same flawed claims asserted in actions around the country by consumers alleging they were purportedly misled by certain statements on Champion Petfoods USA Inc.'s and Champion Petfoods LP's (collectively, "Champion") ORIJEN and ACANA dog food packaging. In her Second Amended Complaint ("SAC") (D.E. 76), Plaintiff's theory of "contamination" alleges that Champion's dog food contained or had "a risk of containing" heavy metals and Bisphenol-A (BPA), non-regional ingredients, non-fresh ingredients and non-natural ingredients, which in turn, rendered Champion's "Biologically Appropriate," "Fresh Regional Ingredients," and "Delivering Nutrients Naturally" statements on its packaging misleading or deceptive.

However, Plaintiff ignores the context in which Champion explains its Biologically Appropriate philosophy on its packaging. That philosophy has nothing to do with the presence of naturally occurring heavy metals or environmentally ubiquitous BPA and, in any event, is not rendered false or misleading by their minute and safe presence. The remaining fragments of Plaintiff's theory are whether she paid a premium price for foods that, unbeknownst to her, contained (a) non-fresh ingredients, (b) non-regional ingredients, and (c) "unnatural" ingredients contrary to Champion's packaging. These roads lead to a dead end. Simply put, Plaintiff's theory requires that Champion's representations on its packaging mean that the dog food contained **<u>no</u>** non-fresh, non-regional, or unnatural ingredients. The actual statements on the bags Plaintiff bought, read in context, and measured against Plaintiff's theory, permit the Court to determine as a matter of law that Plaintiff's theory fails, and that summary judgment should be granted.

## II.      PROCEDURAL HISTORY

Former Plaintiff Rachel Colangelo[1] began in April 2018 as a plaintiff in the *Reitman* action in California, but her claims were dismissed for lack of personal jurisdiction. *See Reitman v. Champion Petfoods USA Inc.*, No. CV181736DOCJPRX, 2018 WL 4945645, at *6 (C.D. Cal. Oct. 10, 2018) (case voluntarily dismissed (D.E. 269) following denial of class certification (*see* D.E. 235, *aff'd*, 830 F. App'x 880 (9th Cir. 2020))). Ms. Colangelo then filed this action on October 16, 2018, (D.E. 01), and later added Kathleen Paradowski as a Plaintiff in an amended complaint filed on January 2, 2019. (D.E. 53.) Earlier versions of the complaint emphasized that Champion's marketing was designed to purportedly "deceive the public" by creating an image that Champion's dog foods are "healthy, safe, and free of contaminants." (D.E. 53 ¶ 86; *see id.* ¶¶ 14, 18, 20, 70, 83, 86, 87, 95; *see also* D.E. 01 ¶¶ 19, 22, 23, 25, 30, 34, 38 (Plaintiff assumed the food was "healthy, superior quality, natural, and safe for dogs to ingest."). The Court granted Champion's motion to dismiss Plaintiff's claims for breach of implied warranty, negligence, and negligence per se, and Plaintiff voluntarily dismissed her unjust enrichment claim. (D.E. 71 at 31.) The Court also held that Plaintiff's "pentobarbital allegations are insufficiently pled to form the basis of any claim," (*id.* at 12), and accordingly is no longer a theory in the operative Second Amended Complaint (D.E. 76, hereinafter "SAC").

In the SAC, Plaintiff retreats from emphasizing the safety of Champion's dog food, and now argues that the dog food purportedly "contained and/or had a material risk of containing undisclosed and non-conforming contaminants and ingredients," without regard to the safety of these ingredients. (SAC ¶ 5.) Now, Plaintiff narrows her claims further by dismissing Colangelo without prejudice (D.E. 90) and limiting her own claims to two ACANA diets produced at

---

[1] After not being willing to sit for a deposition, Ms. Colangelo voluntarily dismissed her claims on November 12, 2020. [D.E. 90].

Champion's Kentucky DogStar kitchen. (D.E. 115.) However, doing so does not cure the fundamental problems with Plaintiff's theory. Indeed, none of the statements on Champion's packaging for these two remaining ACANA diets imply that Champion's dog food is free of naturally occurring heavy metals, environmentally ubiquitous BPA, or non-fresh, non-regional, or non-natural ingredients. At bottom, while Plaintiff can shed theories and other plaintiffs, this fundamental flaw permeates her Second Amended Complaint and necessitates a finding of summary judgment for Champion.

## III.   SUMMARY OF PLAINTIFF'S REMAINING CLAIMS

The SAC's remaining claims are: (i) violation of the New York General Business Law §§ 349 and 350; (ii) breach of express warranty; (iii) fraudulent misrepresentation; and (iv) fraud by omission. The common denominator for each is Plaintiff's allegation that Champion sold dog foods that "contained and/or had a material risk of containing undisclosed and non-conforming contaminants and ingredients, such as heavy metals, BPA, non-fresh ingredients, such as 'regrinds,' which are reused, twice cooked pet food, and non-regional ingredients." (SAC ¶ 5.) Plaintiff does not claim her dogs suffered illness from or were malnourished by consuming Champion dog food.  Plaintiff does claim, however, that she was "misled to pay premium prices" for the dog food that "did not deliver what was promised."  (*Id.* ¶ 18.)

## IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   Background as to Champion

In approximately 1979, Champion's founder began producing dog food in a feed mill in Alberta, Canada, and in approximately 1985 Champion launched the ACANA brand ("A" for Alberta and "Cana" for Canada). (*See* Champion's L.R. 7.1 Statement of Undisputed Material Facts ("SUMF") ¶ 1.) In approximately 2005, Champion developed the ORIJEN brand by adopting a "Biologically Appropriate" nutritional philosophy. (*Id.* ¶ 2.) Unlike dog foods that rely on grains

and/or other fillers, and many synthetic nutritional supplements, ORIJEN's "Biologically Appropriate" approach uses primarily animal-based proteins in an attempt to mirror how wolves or wild dogs would get nutrition in nature (albeit within the limitations of dry kibble form). (*Id.*) Over time, Champion transitioned its "Biologically Appropriate" approach to ACANA. (*Id.* ¶ 3.) Champion's dog food consists of a variety of diets (*i.e.,* formulations) under the ORIJEN and ACANA brand names (with ACANA having three sub-brands in the United States – Heritage, Regionals, and Singles). (*Id.* ¶¶ 4-5.) Beginning in approximately 1990, Champion manufactured all of its dog food out of its NorthStar kitchen in Morinville, Alberta, Canada. (*Id.* ¶ 6.)   In approximately January 2016, Champion opened its new DogStar kitchen in Kentucky and transitioned the manufacturing of nearly all of its dog food sold in the United States to come exclusively from DogStar. (*Id.* ¶ 7.)

### B.      Plaintiff's Purchases of Champion Dog Food

Plaintiff's first purchase of Champion dog food was in 2014. (*Id.* ¶ 8.) Sometime around mid-2016, Plaintiff also purchased ACANA Heritage Free-Run Poultry and ACANA Regionals Meadowland, manufactured at DogStar. (*Id.* ¶ 10.) Plaintiff purchased additional Champion dog food diets, but she stipulated to dismiss with prejudice her claims regarding those diets. (*Id.* ¶¶ 8-10.) Thus, only two diets remain at issue, DogStar ACANA Heritage Free-Run Poultry and ACANA Regionals Meadowland, from two out of three ACANA sub-brands.[2] (*See id.* ¶ 10; D.E. 115.) Plaintiff stopped purchasing Champion dog food altogether in early 2018. (SUMF ¶ 11.)  Her two dogs are healthy other than having allergies. (*Id.* ¶ 12.)

---

[2] This action is now limited to Paradowski's purchases of ACANA Heritage Free-Run Poultry and ACANA Regionals Meadowland formulas manufactured at DogStar that Plaintiff purchased between 2016 and early 2018 when she discontinued purchasing the food. (D.E. 115; *see* SUMF ¶¶ 8-10.). Accordingly, this motion focuses on the packaging that was in distribution from 2016 until early 2018 when Plaintiff stopped purchasing Champion's dog food.

### C.      Statements on Champion's Dog Food Packaging

During all relevant times, the front of the packaging for the diets at issue Plaintiff purchased stated the diet was "Biologically Appropriate Dog Food." (SUMF ¶ 13.) Champion explains its "Biologically Appropriate" philosophy on its DogStar ACANA Meadowland and Free-Run Poultry packages by stating that "[o]ur foods mirror the richness, freshness and variety of meats for which dogs are evolved to eat." (*Id.* ¶ 14.)  The DogStar ACANA Free-Run Poultry bag further explains "your dog is a carnivore, designed by nature to thrive on whole game, fowl or fish, and possessing a biological need for foods that are rich and varied in fresh whole animal ingredients." (*Id.* ¶ 15.) The DogStar ACANA Meadowland bag states it includes "ingredients [that] mirror your dog's evolutionary diet." (*Id.* ¶ 16.) The bags also explain the phrase is expressed through Champion's "protein rich, carbohydrate limited" formulations. (*Id.* ¶ 17.)

On each bag purchased by Plaintiff, Champion indicated that the diet contained "fresh" ingredients, among other ingredients in other forms. (SUMF ¶ 19.) For example, the front of the DogStar ACANA Free-Run Poultry package states it is ACANA's "Free-Run Poultry Formula **with** fresh cobb chicken, turkey, & nest-laid eggs." (*Id.* ¶ 20 (emphasis added).) It also states on the front of the bag, along with the DogStar ACANA Free-Run Poultry package, that it is "infused with freeze-dried chicken liver." (*Id.* ¶ 21.) The top left front corner of both packages state it contains "unmatched regional ingredients FRESH OR RAW," with key ingredients depicted right underneath, and the back of both packages explain that some ingredients are "delivered FRESH or RAW, so they're bursting with goodness and taste." (*Id.* ¶ 24.) The back of the ACANA Meadowland bag states "this 25 lb package of ACANA is made with 17 ½ lb [of] premium animal ingredients. Half are FRESH or RAW and loaded with goodness, and half are DRIED or OILS to provide a strong and natural source of animal proteins and fats." (*Id.* ¶ 25.)  The back of a 13-

pound bag[3] of ACANA Free-Run Poultry states "this 13 lb package of ACANA is made with over 7 ¾ lb [of] free-run poultry & egg ingredients. Half are FRESH or RAW and loaded with goodness and taste, and half are DRIED or OILS to provide a strong and natural source of animal proteins and fats." (*Id.* ¶ 26.)  While the ACANA Regionals Meadowland and Heritage Free-Run Poultry diets contained a significant amount of fresh ingredients, among other ingredients in other forms, such as raw, dried, dehydrated, freeze-dried or oils, *see id.* ¶¶ 19-28, Champion never states that 100%, each, every, or all ingredients are fresh, that its ingredients are "never frozen," or that its dog food contains no frozen ingredients. (*Id.* ¶ 32.)

On each bag purchased by Plaintiff, Champion also indicated that the diet contained "regional" ingredients, among others, explaining that Champion has a "**focus** on fresh ingredients from our region." (SUMF ¶¶ 33-34 (emphasis added).) The front of the packages generally states that America's "fertile farms and meadows" and "fertile farmlands" are Champion's "source of inspiration and fresh regional ingredients." (*Id.* ¶ 35.)  More specifically, each DogStar ACANA bag names the city or county and state where some key ingredients were sourced on the front of the packaging. (*Id.* ¶ 36.)  For example, the ACANA Meadowland package accurately states these ingredients were sourced at the following locations: "Free-Run Chicken: Mayfield, Kentucky; Free-Run Turkey: Mercer County, Ohio; Freshwater Catfish: Paducah, Kentucky; Rainbow Trout: Soda Springs, Idaho." (*Id.* ¶ 37.) The ACANA Free-Run Poultry package accurately states these ingredients were sourced at the following locations "Free-Run Chicken: Mayfield, Kentucky; Free-Run Turkey: Mercer County, Ohio; Nest-laid Eggs: Paducah, Kentucky; Fruits & Vegetables: Louisville, Kentucky." (*Id.* ¶ 38.) While the ACANA Regionals Meadowland and Heritage Free-

---

[3] The statements on the packaging of a particular diet are the same no matter the size of the bag, with the exception of the Meat Math calculation of poundage quantities.

Run Poultry diets contained a significant amount of regional ingredients[4], *see id.* ¶¶ 33, 37-38, Champion never states on any of its packaging that 100%, each, every or all ingredients are exclusively regional or local; nor does Champion limit the word "regional" to a certain distance or location. (*Id.* ¶ 42.)

Finally, the SAC alleges that the phrase "Delivering Nutrients Naturally" is misleading.[5] SAC ¶¶ 2(f), 14(f), 74(f), 182(f), 192(f). This phrase appears on the back of the DogStar ACANA Meadowland and Free-Run Poultry packages purchased by Plaintiff: "Mirroring nature, ACANA WholePrey foods feature a nourishing balance of poultry, organs and cartilage — all of which reflect the whole prey animal, delivering nutrients naturally. That's why you won't find long lists of synthetic additives in ACANA foods." (*Id.* ¶ 46.)  The front of the packages state that the formulas include "zinc proteinate – our one and only supplement," which is, in fact, the only synthetic ingredient used in the 2016-2017 formulas of ACANA Meadowland and Free-Run Poultry, as reflected in the ingredient panels.[6] (*Id.* ¶¶ 47-48.) Plaintiff herself testified that

---

[4] *See* Plaintiff's Motion for Class Certification Exhibit 25 [D.E. 108-27], at 5 ("The total combination of regional ingredients in most of our foods would be approximately 50%, with some formulas exceeding this depending on primary ingredients.").

[5] The SAC alleged three additional statements were misleading: (i) "Provid[e] a concentrated source of virtually every nutrient your dog needs to thrive, naturally, without long lists of synthetic supplements – only zinc is added"; (ii) "Guaranteed to keep you dog healthy, happy, and strong"; and (iii) "Nourish as Nature Intended." (SAC ¶¶ 2(c)-(e), 14(c)-(e), 74(c)-(e), 182(c)-(e); 192(c)-(e).) The first and third statements only appear on DogStar ORIJEN packaging, but Plaintiff dropped her claims regarding ORIJEN, and therefore summary judgment should be entered as to these statements. (SUMF ¶ 43; D.E. 115.) The second statement appears on the back of the DogStar ACANA Meadowland and Free-Run Poultry packages purchased by Plaintiff. (SUMF ¶ 44.) However, Plaintiff has agreed to drop her claim based on the second statement following a meet and confer with Champion's counsel on April 6, 2021. (*Id.* n.5) In any event, Plaintiff testified that Champion dog food kept her dogs happy and strong, and plaintiff makes no claim that her dogs were made unhealthy by consuming the ACANA diets. (*Id.* ¶ 45.)

[6] As required by AAFCO regulations, the back of every Champion package has an ingredient panel that lists all ingredients in order of weight, which Plaintiff testified she read. (SUMF ¶¶ 40-41.) The Association of American Feed Control Officials ("AAFCO") provides a forum for state

Champion did not have a long list of synthetic additives. (*Id.* ¶ 49.) In fact, the nutrients provided to dogs from the consumption of Champion's ACANA Meadowland and Free-Run Poultry dog food come from natural ingredients rather than synthetic ingredients (with the exception of zinc proteinate). (*Id.* ¶ 50.)

### D.    The Levels of Heavy Metals in Champion Dog Food are Not Unsafe

Nearly all foods, whether for humans or pets, contain some levels of heavy metals, such as arsenic, cadmium, lead, and mercury. (SUMF ¶ 56.) These heavy metals are naturally occurring elements that are ubiquitous in the environment and commonly found in dog foods. (*Id.* ¶ 57.) The trace levels of heavy metals in Champion's dog food are naturally occurring in the ingredients it used to make the food; Champion does not add heavy metals as ingredients. (*Id.* ¶¶ 56-59.)

In 2005, the National Research Council ("NRC") published a study in the Mineral Tolerance of Animals, 2nd Revised Edition, 2005, that provided maximum tolerable limits ("MTLs") for arsenic, cadmium, lead, and mercury in dog foods. (*Id.* ¶ 61.) In 2011, the FDA conducted its own review of heavy metals in pet food entitled the Target Animal Safety Review and adopted the MTLs utilized by the NRC, namely (1) Arsenic 12,500 µg/kg[7] (12.5 mg/kg); (2) Cadmium 10,000 µg/kg (10 mg/kg); (3) Lead 10,000 µg/kg (10 mg/kg); and (4) Mercury 267 µg/kg (.27 mg/kg). (*Id.* ¶ 62.) In 2002, the European Union ("EU") had enacted regulations for the safe upper limits of arsenic (10 mg/kg), cadmium (2 mg/kg), mercury (.3 mg/kg), and lead (5 mg/kg) in pet foods. (*Id.* ¶ 63.)

Heavy metals in Champion's dog food are below the MTLs set by the NRC/FDA and the EU safety standards for heavy metals in pet food. (SUMF ¶ 64.) This is confirmed by testing by

---

regulatory officials to come together and create model guidelines to ensure that the regulation of animal feeds is as uniform as possible from state to state. (*Id.* ¶ 29.)

[7] 1 ppb (part per billion) is equivalent to 1 ug/kg, and 1 ppm (part per million) is equivalent to 1 mg/kg or 1000 ppb.

Eurofins Laboratory, as well as the testing performed for Plaintiff by Iowa State University Veterinary Diagnostic Lab and Ellipse Analytics Laboratory. (*Id.* ¶¶ 65-68.) Plaintiff's Ellipse Analytics tested hundreds of dog foods and found the presence of heavy metals in almost all of them. (*Id.* ¶ 69.) At Champion's request, Eurofins tested competitor dog foods for arsenic, cadmium, lead, and mercury, and found the presence of heavy metals (also at safe levels) in all of them. (*Id.* ¶ 70.) As Champion's toxicology expert Dr. Poppenga concluded, "the levels of naturally occurring heavy metals in ACANA and ORIJEN dog food diets do not present a health risk to dogs." (*Id.* ¶ 71.)  Plaintiff's expert was unable to identify any known safety standard or guideline for dog food that Champion is violating. (*Id.*  ¶ 72.)

### E.   BPA is Widely Present in the Environment, Not Uncommon in Dog Food, and the Levels Found in Champion's Dog Food Would Not Harm a Dog

BPA is a chemical that is produced for use primarily in polycarbonate plastics and epoxy resins. (SUMF ¶ 74.) Polycarbonate plastics and epoxy resins frequently appear in water bottles, infant bottles, CDs, medical devices, and lacquers to coat products such as food cans and bottle tops. (*Id.* ¶ 75.) Humans and animals are most commonly exposed to BPA through their diet, as BPA tends to leach into food and liquid. (*Id.* ¶ 76.) However, because of humankind's extensive use of plastics, BPA is also prevalent in the environment, and many studies have measured levels of BPA in our air, dust, and water. (*Id.* ¶ 77.) Given BPA's ubiquitous presence in our environment, humans and animals are exposed to BPA daily through a variety of pathways. (*Id.*  ¶ 78.) Champion does not add BPA as an ingredient. (*Id.* ¶ 79.) Nor does Champion advertise its food as "BPA Free," or words to that effect. (*Id.* ¶ 80.) Plaintiff also does not claim that any of her dogs suffered any adverse health consequence from BPA exposure from any source.

Based on a test of one sample of particular diets, Plaintiff alleges that Champion's DogStar ACANA Heritage Free-Run Poultry contains 62.20 ppb of BPA, and ACANA Regionals

Meadowland contains 82.70 ppb of BPA. (SAC ¶ 7.) Plaintiff's lab, Ellipse Analytics, utilized a

30 ppb Level of Quantification ("LOQ") testing criteria to obtain these results. (SUMF ¶ 81.)

Ellipse tested several hundred dog foods and found that approximately one-third had BPA in them.

(*Id.*) If Plaintiff's lab had used a more sensitive LOQ, it would have found BPA in even more of

the dog foods it tested. (*Id.* ¶ 82.) Another laboratory, ExperTox, utilized by Plaintiff to test

Champion's dog food diets for BPA did not detect any BPA in any of the 38 samples of

Champion's dog food it tested, including the diets purchased by Plaintiff. (*Id.* ¶ 83.) At Champion's

request, Eurofins laboratory tested samples of the diets Plaintiff purchased for BPA, utilizing a

highly sensitive 5 ppb LOQ for BPA. (*Id.* ¶ 84.) Eurofins' testing reported that samples of ACANA

Heritage Free-Run Poultry and ACANA Regionals Meadowland contained barely detectable

levels of 5.30 and 5.90 ppb of BPA, respectively, (but would read as a "zero" under Plaintiff's

criteria); and 20 out of the 24 samples of Champion dog food tested were reported to have non-

detectable levels of BPA. (*Id.* ¶¶ 84-86.) Additionally, Eurofins' testing of competitor dog foods

demonstrated that BPA was similarly found in competitor brands at various low levels. (*Id.* ¶ 87.)

The levels of BPA purportedly in Champion's dog food according to the SAC would not cause an

adverse health effect in a dog. (*Id.* ¶ 88.) Plaintiff has put forth no expert who opines that the BPA

levels detected would be harmful to a dog. (*Id.* ¶ 89.)

## V.    ARGUMENT[8]

### A.    Summary Judgment Should Be Entered on Counts I-IV Based on Alleged Misrepresentations

Plaintiff's claims for violation of NY GBL §349 and §350, breach of express warranty, and

fraudulent misrepresentation each fail as they are premised on statements that are not misleading,

---

[8] The Rule 56 standard is set forth in *Wing v. Albank Finical Corp.*, No. 98-CV-461, 2000 WL 516525, at *1 (N.D.N.Y. Mar. 8, 2000) (Kahn, J.).

deceptive, fraudulent, or untrue.  To prevail on a claim under NY GBL §349 or §350, Plaintiff must demonstrate that Champion engaged in deceptive, misleading, false, or unfair practices in marketing and selling its dog food that are likely to mislead a consumer acting reasonably. *See, e.g.,* N.Y. GBL §§ 349, 350; *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189 (E.D.N.Y. 2018). Similarly, a breach of express warranty is shown "when the express warranty was false or misleading when made." *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409, 2020 WL 729883, at *7 (E.D.N.Y. Feb. 13, 2020) (internal citations and quotation marks omitted). Finally, to prove a fraudulent misrepresentation claim, Plaintiff must demonstrate: "(1) a misrepresentation [] of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Id.* at *9 (citation omitted).

The Court must determine "whether a practice is deceptive or misleading through the 'reasonable consumer' standard, *i.e.*, by analyzing whether the practice would be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Devane v. L'Oreal USA, Inc.*, No. 19 CIV. 4362, 2020 WL 5518484, at *4 (S.D.N.Y. Sept. 14, 2020); *Sarr*, 2020 WL 729883, at *3–4 (analyzing N.Y. GBL §349, §350, and breach of warranty claims under reasonable consumer standard). The determination that a reasonable consumer is likely to be misled by a label requires proof "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018); *Devane*, 2020 WL 5518484, at *3.  Plaintiff can do no such thing. Therefore, Champion is entitled to summary judgment on Counts I through IV to the extent they are premised on purported misrepresentations.

1.     **The Phrase "Biologically Appropriate" is Puffery and Otherwise Non-Actionable.**

Champion's representation that its dog food is "Biologically Appropriate" is puffery, and therefore, is not actionable. As a matter of law, statements such as "Biologically Appropriate" are non-actionable statements of opinion because they are not capable of being proven as true or false.[9] *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) ("characteriz[ing] puffery as 'subjective claims about products, which cannot be proven either true or false'") (quoting *Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995)); *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 224–25  (E.D.N.Y. 2020) (weighing "several factors such as vagueness, subjectivity, [] the inability to influence a consumer's expectations," generalization, exaggeration, and "overstatement in broad and commendatory language" to find defendants' statements are puffery and "largely vague and lacking in precise meaning.").

On the packaging at issue, Champion explains that "[o]ur foods mirror the richness, freshness and variety of meats for which dogs are evolved to eat" which is why it includes "ingredients [that] mirror your dog's evolutionary diet." (SUMF ¶ 14.)  "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception."  *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157

---

[9] Champion recognizes that the Court previously found that the "Biologically Appropriate" statement was actionable as pled and declined to find it was puffery. (D.E. 71 at 16-18.) However, that was under the Rule 12 standard, which requires the statement to be "obviously puffing" solely based on Plaintiff's allegations, not any evidence (*i.e.,* Champion's complete packaging). (*Id.* at 17.) With the factual record submitted herewith and scrutiny of the entire packaging at issue, Champion submits that "Biologically Appropriate" is Champion's opinion about what sort of diet is appropriate for a dog. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself. And in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.").

(NSR), 2017 WL 4045952, at *9 (S.D.N.Y. Sept. 11, 2017). In context, nothing in these statements implies that the "Biologically Appropriate" statement is anything but Champion's opinion about what dogs should eat. Indeed, Plaintiff thought the phrase meant "the ingredients that are in the food are appropriate for a puppy … that it would be digestible and appropriate for a puppy." (SUMF ¶ 18.) Thus, the "Biologically Appropriate" philosophy conveys an opinion or matter of judgment on what kind of food is appropriate for a dog or puppy, which is not actionable. *See, e.g., Jacobs v. Lewis*, 261 A.D.2d 127, 127–28 (1st Dept. 1999) (dismissing complaint because "alleged misrepresentations amounted to no more than opinions and puffery or ultimately unfulfilled promises, and in either case were not actionable as fraud"); *Sirohi v. Lee*, 222 A.D.2d 222, 222 (1st Dept. 1995) ("a mere expression of opinion, rather than a misrepresentation of a material fact [] is insufficient to support an action for fraud"); *Bank of New York v. Realty Grp. Consultants*, 186 A.D.2d 618, 619 (1st Dept 1992) (to succeed on a claim of fraud "the representation must be one of fact and not opinion"). Because "Biologically Appropriate" is an expression of opinion, it cannot be an actionable statement, requiring entry of summary judgment on this statement.[10]

### 2.      Even if "Biologically Appropriate" was Actionable, Plaintiff's Claim Still Fails Because it is Not False or Misleading Due to the Presence of Heavy Metals or BPA

Champion does not advertise that its diets contain no heavy metals or are free of heavy metals or BPA-free or any words to such an effect. So Plaintiff tries to tie in heavy metals and BPA to the "Biologically Appropriate" statement on the packaging. But Plaintiff has no peg on

---

[10] Nor can this statement create an express warranty. *Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205 (PJS/KMM), 2020 WL 7624861, at *5 (D. Minn. Dec. 22, 2020) ("A reasonable consumer is highly unlikely to interpret 'biologically appropriate' as a guarantee that the dog food contains no heavy metals whatsoever."); *id.* at *7 ("It is farfetched to suggest that a reasonable consumer would read this phrase on a bag of dog food as a guarantee that **all** of the ingredients in the package were fresh and came from a regional source (whatever 'regional' might mean).") (emphasis added).

which to hang such a hat.[11]

Trace amounts of heavy metals in Champion's foods are naturally occurring in the ingredients (mostly in the animal-based proteins) used to make the food; Champion does not add heavy metals as ingredients. (SUMF ¶ 59.) The heavy metals are not present at a level that would pose a danger to a dog consuming the food. (*Id.* ¶ 71.) Even taking the highest level of each heavy metal in the diets listed in the SAC, these levels are still but a fraction of any known MTL for heavy metals in dog food, and the level for the two diets now at issue are far less than the respective MTLs. (SAC ¶ 7; SUMF ¶ 67.) Further, the levels are similarly below the EU standards. (*Id.* ¶ 64.) The phrase "Biologically Appropriate," does not signify to a consumer acting reasonably that Champion's dog food is free of naturally occurring heavy metals. Consequently, the "Biologically Appropriate" statement is not rendered false or misleading by the mere presence of naturally occurring heavy metals in the ingredients. *See Song*, 2020 WL 7624861, at *5 ("A reasonable consumer is highly unlikely to interpret 'biologically appropriate' as a guarantee that the dog food

---

[11] In ruling on Champion's Motion to Dismiss the First Amended Complaint, the Court noted "Plaintiffs provide the specific source of many of these alleged statements, noting, for instance, that Defendants 'warrant, promise, represent, mislead, label, and/or advertise that the Contaminated Pet Foods are free of any heavy metals, pentobarbital, toxins, BPA, and/or unnatural ingredients by making assurances that the food represents an evolutionary diet that mirrors that of a wolf—free of anything 'nature did not intend for your dog to eat.'" (D.E. 71 at 6 (quoting FAC ¶ 10).) However, the First Amended Complaint misquotes and takes out of context the Champion brochure from FAC ¶ 10 that Plaintiffs partially quoted. (SUMF ¶ 52.) The brochure discusses how Champion implements the "Biologically Appropriate" philosophy in its ACANA brand by including "richly nourishing meat inclusions [as ingredients]…excluding high-glycemic carbohydrates, vegetable proteins, synthetic additives and anything else [*i.e.,* any other ingredients] nature didn't intend your dog to eat." (FAC ¶ 10 (image).) The brochure addresses Champion's use and exclusion of ingredients when it formulates its diets to provide nutrition. (*Id.*) The brochure ***does not represent that ingredients are free of BPA or heavy metals***; meats contain naturally occurring heavy metals. (SUMF ¶ 56.) In any event, that brochure was only circulated to distributors and retailers and was generally not circulated to the public at-large, and Plaintiff testified that she did not read or rely on any Champion brochures. (*Id.* ¶¶ 52, 53.) The "excluding…anything else nature didn't intend your dog to eat" language does not appear on any packages of the diets Plaintiff purchased. (*Id.* ¶ 54.)

contains no heavy metals whatsoever. The phrase 'biologically appropriate' does not, on its face, say anything about heavy metals, except that the dog food does not contain any ingredient (including heavy metals) that would make it unfit for a dog to consume."); *Weaver v. Champion Petfoods USA Inc.*, No. 18-CV-1996-JPS, 2019 WL 2774139, at *3 (E.D. Wis. July 1, 2019) (holding the "mere presence of heavy metals" does not defeat Champion's quality claims); *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 604 (E.D. Wis. 2019) (holding "[p]laintiff thus lacks any affirmative proof that Orijen contains concentrations of heavy metals which 'are excessive, dangerous, and render [Champion's] representations regarding the Products, including the packaging of the Products, false and misleading").

Similarly, the trace levels of BPA sometimes found in Champion's finished food product does not render Champion's "Biologically Appropriate" statement untrue or misleading. Champion's "Biologically Appropriate" philosophy pertains to the design of, *i.e.*, the formula for, Champion's dog food diets. It is undisputed that ***BPA was not added as an ingredient*** to Champion's diets. (*Id.* ¶ 79.) Indeed, Plaintiff has no expert opinion to explain how trace amounts of BPA may sometimes get into Champion's finished product other than to speculate about possible sources. (*Id.* ¶ 90.) Plaintiff's own expert admitted that his lab tested hundreds of dog food diets and found BPA in a third of them, and would have found more if the lab used lower than a 30 ppb LOQ. (*Id.* ¶¶ 81-82.) Finally, Plaintiff cannot demonstrate that she ever purchased Champion dog food that contained BPA. Her BPA allegations are pure speculation.

As with heavy metals, any trace levels of BPA in Champion's foods are ***not found*** at a level that would pose a danger to dogs. (SUMF ¶ 88.)  To that end, Plaintiff puts forth no expert who opines that the BPA levels are at an unsafe level. (*Id.* ¶ 89.)  As stated by the *Weaver* court:

> "The Court sees no reason to treat BPA differently than heavy metals. To hold
> Defendants liable for the risk that their products contain unintended and non-

harmful concentrations of these substances, a fact common to many other pet food manufacturers, would be extraordinary."

471 F. Supp. 3d at 882.[12]

In short, as with heavy metals, Plaintiff's theory based on the mere risk of or the actual presence of BPA does not render the "Biologically Appropriate" statement misleading.

### 3. Champion's Statement that Its Dog Food Contains "Fresh" Ingredients is Not Misleading

Plaintiff cannot demonstrate that Champion falsely advertised its dog food as ***only*** containing "fresh" ingredients. To start, Champion never stated on its DogStar packaging that its dog food contains "only" fresh ingredients, that the ingredients are "all" fresh, or "100%" fresh, or, for that matter, "Never Frozen." (SUMF ¶ 32.) The DogStar ACANA Meadowland and Free-Run Poultry packages purchased by Plaintiff state on the front that they include "**freeze-dried chicken liver**." (*Id.* ¶ 21 (emphasis added).) The Free-Run Poultry formula also stated it was made "**with** fresh cobb chicken, turkey, & nest-laid eggs," among other ingredients in other forms. (*Id.* ¶ 20 (emphasis added).) This is made clear through the prominent Meat Math on the back of each bag, with the DogStar ACANA Meadowland stating, "this **25 lb package** of ACANA is **made with** over **17 ½ lbs of Premium Animal Ingredients, half are fresh or raw**[13] and loaded with

---

[12] Plaintiff suggests that Champion's packaging would give a reasonable consumer the impression that its dog food does not contain naturally occurring heavy metals or BPA by proffering an "Expectations Survey" from her expert Stefan Boedeker. (D.E. 108-54.) However, this does not generate a genuine dispute of material fact because Mr. Boedeker's "Expectations Survey" only showed respondents Champion's packaging without a control group and asked if they were more or less likely to purchase the dog food shown if it did not contain heavy metals and did not contain BPA. (*Id.* at 29-48.) And, in no way does this survey tie the "Biologically Appropriate" statement to heavy metals or BPA. This survey will be the subject of a *Daubert* motion.

[13] AAFCO defines "raw" as "food in its natural or crude state not having been subjected to heat in the course of preparation of food." (SUMF ¶ 30.) Therefore, "raw" includes ingredients that are or were frozen before being used in production; the raw ingredients Champion used were "fresh frozen." (*Id.* ¶ 31.)

goodness, **and half are dried or oils,**" and identifies those ingredients. (*Id.* ¶ 25 (emphasis added).) Similarly, the DogStar ACANA Heritage Free-Run Poultry packaging states a 13-pound package contains 7 ¾ pounds of free-run poultry and egg ingredients with half being fresh or raw and the other half being dried or oils. (*Id.* ¶ 26); *see also Song*, 2020 WL 7624861, at *8 ("[T]he Champion packages themselves make clear that not all of the ingredients are fresh."); *Weaver*, 471 F. Supp. 3d at 884 ("when the dog food packaging is viewed in full, it is clear that … at least several pounds … are not fresh ingredients.").

Plaintiff's theory that all ingredients are fresh fails as a matter of law. *See Verzani v. Costco Wholesale Corp.*, No. 09 CIV 2117 CM, 2010 WL 3911499, at *2 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir. 2011) ("A reasonable consumer reading the tray's label would not pick out 'shrimp' to the exclusion of all the information on the label (including the product's name and the listed ingredients)"); *Sarr*, 2020 WL 729883, at *4 (dismissing N.Y. GBL §§349, 350, fraud, and express warranty claims and stating "it is not plausible that a reasonable consumer would likely interpret the 'real butter' representation to imply that the Mashed Potatoes did not also contain additional fats."). The *Weaver* court came to this same conclusion:

> "[W]hen the dog food packaging is viewed in full, it is clear that some ingredients are 'fresh, raw, or dehydrated,' and that some ingredients are frozen and/or freeze-dried, and that at least several pounds of both types of dog food are not fresh ingredients. It is absurd to conclude that one statement can be read in isolation regarding all the ingredients in a product while ignoring the other statements on the packaging that refute that conclusion."

*Weaver*, 471 F. Supp. 3d at 884. Moreover, the ACANA Meadowland and Free-Run Poultry Plaintiff purchased did contain fresh poultry, eggs, fruits and vegetable ingredients. SUMF ¶ 28; *see also Weaver*, 471 F. Supp. 3d at 884 ("Defendants do use fresh ingredients in their dog food, therefore the statement on the packaging is not false or misleading."). In short, Champion never represented that its finished dog food contained ***all*** fresh ingredients; inferring to the contrary is

17

not reasonable as a matter of law. SUMF ¶ 37; *see Song*, 2020 WL 7624861, at *7 (["T]he statement that a bag of dog food contains 'fresh regional ingredients' does not imply that it is comprised *exclusively* of ingredients that are fresh and regional."). Summary judgment should be entered as to Plaintiff's claims tied to "fresh ingredients."[14]

### 4. Champion's Statements that Its Dog Food Is Made With "Regional" Ingredients are Not Untrue or Misleading

Plaintiff claims that Champion's dog food in question includes "non-regional" ingredients, so its statement as to "regional" ingredients is false and deceptive. (SAC ¶ 97.) Once again, Plaintiff is off base. Champion explained that regional sourcing is but one "**focus**" of Champion's, but it never advertised its dog food as **only** containing "regional" ingredients, or that the ingredients are "all regional," or "100% regional." SUMF ¶¶ 34, 42; *Song*, 2020 WL 7624861, at *9 ("Champion has not made any statement that a reasonable consumer would interpret as a representation that every single ingredient used to make the dog food—including, for example, saltwater fish such as mackerel and flounder—comes from within 100 miles of Champion's plant in Kentucky."). Nor is there an objective definition of "regional" that Plaintiff can point to on the bags that was violated. Further, Champion's DogStar packaging provides context for the "regional" statement. The DogStar packaging of ACANA Heritage Free-Run Poultry and Meadowland state in various ways that "America" is the source of inspiration and fresh regional ingredients. (*Id.* ¶ 35.)

The ingredients Champion represented as "regional" were regional, within the context of

---

[14] The SAC alleges that Champion has used expired ingredients (which were inspected and deemed good to use) and/or regrinds (SAC ¶ 96) in making dog food, but she is unable to prove that she purchased a bag which contained either expired ingredients or regrinds. Since Plaintiff considers these as examples of non-fresh ingredients, these are just a subspecies of Plaintiff's theory that non-fresh ingredients were used in making Champion's dog food and thus fails as a matter of law for the same reasons explained above.

the full communication on the package. (SUMF ¶¶ 37-38.) The ACANA Regional Meadowland diet did in fact source chicken from Mayfield, Kentucky, turkey from Mercer County, Ohio, freshwater catfish from Livingston County, Kentucky, and rainbow trout from Soda Springs, Idaho.[15] (*Id.* ¶ 37.) And as stated on the ACANA Heritage Free-Run Poultry packaging, Champion did in fact sourced the chicken from Mayfield, Kentucky, the turkey from Mercer County, Ohio, the eggs from Paducah, Kentucky, and the vegetables and fruits from Louisville, Kentucky. (*Id.* ¶ 38.) The presence of some non-regional ingredients does not make Champion's made with "regional" ingredients statement false. *See Kennedy v. Mondelēz Glob. LLC*, No. 19-CV-302-ENV-SJB, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020) ("Stating the grahams are 'made with real honey' is a factually true statement about the product" that "does not foreclose the use of other sweeteners" so as to "make the representation deceptive."). Similar to the fresh statement, the *Weaver* court rejected Plaintiff's implausible interpretation of the "regional" statement:

> "[T]he same flawed logic permeates Plaintiff's argument that Defendants' 'regional ingredients' statement is misleading. Defendants do indeed use regional suppliers for ingredients, however, nowhere on the packaging does it state that all of the ingredients are regional. Further, the packaging for both NorthStar and DogStar included statements that provided context to what 'regional' meant. It also seems obvious that the salt-water fish included in the Six Fish dog food would not be regional to Kentucky, but rather to the Atlantic Ocean as advertised on the packaging. Thus, because the packaging included statements that provided context to 'regional' and did not state that all ingredients were regional, the 'Regional' statement is not false or misleading."

*Weaver*, 471 F. Supp. 3d at 884.

When Plaintiff's myopic and constricted view of regional is replaced with Champion's actual statements, the undisputed facts demonstrate that Champion did not make an untrue or misleading representation as to "regional," warranting entry of summary judgment as to this

---

[15] To the extent Plaintiff contends "regional" means from Kentucky (*See* SAC ¶¶ 101-103), the packaging does not support such a definition.

theory. *See Song*, 2020 WL 7624861, at *9 ("Champion's statements about 'regional' ingredients were not false, misleading, or deceptive."); *Sweringen v. N.Y. State Dispute Resolution Ass'n*, No. 1:05-CV-428, 2010 WL 572204, at *5 (N.D.N.Y. Feb. 16, 2010) (granting motion for summary judgment on GBL §§ 349 and 350 claims "because no rational jury could find that the communications of which [plaintiff] complains were likely to mislead a reasonable consumer under the circumstances. Nor could a rational jury find that these communications caused [plaintiff] injury."). Because Champion used regional ingredients, and never represented that it exclusively used regional ingredients, summary judgment should be entered.

### 5. The Statement "Delivering Nutrients Naturally" is Not False or Misleading

Plaintiff alleges the following statement is false or misleading: "Delivering Nutrients Naturally." SAC ¶¶ 2(f), 14(f), 74(f), 182(f), 192(f). To the extent Plaintiff interpreted this phrase to mean all ingredients were natural, such an interpretation is implausible. Champion does not represent that all or 100% of its ingredients are natural, or anything of the sort, and discloses on the front of its packaging that zinc proteinate is its "one and only supplement." (SUMF ¶¶ 47-48, 51.) Regardless, the nutrients derived from Champion's dog food come predominantly from natural ingredients rather than synthetic ingredients, and the nutrients derived by dogs from that food come from natural ingredients other than zinc proteinate. (*Id.* ¶ 50.) As such, Champion should be awarded summary judgment on this statement. *See Song*, 2020 WL 7624861, at *10 ("The Court therefore finds that plaintiffs have not plausibly alleged that 'delivering nutrients naturally' is false, misleading, or deceptive."); *see also Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (holding that "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the [p]roducts").

**B.**     **Summary Judgment Should Be Entered on Counts I and V Based on Alleged Omissions**

As one court has already found, Plaintiff is attempting to shoehorn an "omissions" claim based on the same conduct as the claims for misrepresentation. *Weaver*, 2019 WL 2774139, at *5 ("Plaintiff's claim for fraud by omission is better described as one for intentional misrepresentation."); *see also* SAC ¶ 53 (outlining the purported omissions).  Because the omission claims rely on the same deficient misrepresentation theories that form the basis for Plaintiff's misrepresentation claims, these claims must also fall on summary judgment. *See* Section A.

To prove an omissions-based claim under GBL § 349, the plaintiff must establish that the defendant "alone possess[es] material information that is relevant to the consumer and fails to provide this information." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016).  New York courts apply "an objective definition of deceptive acts and practices" to determine "whether representations or omissions [are] likely to mislead a *reasonable consumer acting reasonably* under the circumstances." *Gomez-Jimenez v. New York Law Sch.*, 943 N.Y.S.2d 834, 852 (Sup. Ct.), *aff'd*, 103 A.D.3d 13 (1st Dept. 2012); *see Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 74 (S.D.N.Y. 2006) ("the allegedly deceptive acts, representations or omissions must be misleading to a reasonable consumer"). Because Champion did not solely possess information relevant to a reasonable consumer, Champion is entitled to summary judgment on Plaintiff's GBL § 349 omissions claim.

To prove her common law fraudulent omission claim, Plaintiff must prove "(1) a material … omission of fact; (2) made by defendant with knowledge of its falsity (3) and an intent to deceive; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Boone v. Codispoti & Assocs. P.C.*, No. 15 Civ. 01391, 2015 WL 5853843, at *2 (S.D.N.Y. October 7, 2015) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir.

2006)).  Plaintiff must also establish that Champion owed her a duty to disclose. *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F. 3d 1478, 1483 (2d Cir. 1995). Generally, a duty to disclose exists: (1) where there is a fiduciary relationship between the parties,[16] or (2) where one party possesses superior knowledge, not readily available to the other, **and** knows that the other party is acting on the basis of mistaken knowledge.  *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir. 1984); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019).  Champion is entitled to summary judgment because Plaintiff cannot establish that Champion owes her a duty to disclose for two independent reasons. *See id.*

First, Champion did not possess peculiar knowledge of essential or material facts that renders the purchase of its dog food inherently unfair. *See Jana L. v. W. 129th St. Realty Corp*., 22 A.D.3d 274, 278 (1st Dept. 2005) (noting the material fact must be "peculiarly within the knowledge" of defendant and "that the information was not such that could have been discovered by [plaintiff] through the 'exercise of ordinary intelligence'").  As an initial matter, that ingredients (and the final product) could have the presence of heavy metals is not peculiarly within Champion's knowledge. As one court put it, "by ordinary diligence and attention, Plaintiff[] should have known that anything containing fish might also contain high concentrations of heavy metals." *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 972–73 (E.D. Ky. 2019) (finding "[t]he fact that heavy metals naturally exist in organic proteins and in high concentrations in fish … belies Plaintiffs' logic that Champion had a duty to disclose this information."). Further, several plaintiffs in related cases testified that they knew the Champion dog food they purchased likely

---

[16] Plaintiff does not allege that she is in a fiduciary relationship with Champion. "Where there is no fiduciary relationship that would impose a duty to disclose, a party's mere silence without some act which deceived the other party cannot constitute a concealment that is actionable as fraud." *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 366–67 (N.D.N.Y. 2013), *aff'd*, 561 F. App'x 48 (2d Cir. 2014).

had heavy metals. (SUMF ¶ 60.)  Separately, the levels of heavy metals and BPA in Champion's dog food were not material to the transaction because they are minute and safe (SUMF ¶¶ 64-68, 71, 88), and all (or nearly all) dog foods, including the dog foods Plaintiff purchased after discontinuing Champion, contain naturally occurring heavy metals and most contain (or have a risk of containing) trace amounts of BPA. (*Id.* ¶¶ 56-58, 81-82, 85-87.) Because the potential minuscule presence of naturally occurring heavy metals or BPA in Champion's dog food was not peculiarly within Champion's knowledge and is otherwise not material to the transactions with Plaintiffs, their presence cannot serve as the basis of an omissions claim. *Jana L.*, 22 A.D.3d at 278; *see Parks*, 377 F.Supp. 3d at 248 ("The presence of negligible amounts of glyphosate in a dog food product that do not have harmful, toxic, or carcinogenic effects is not likely to affect consumers' decisions in purchasing the product and is thus not material."); *Weaver*, 471 F.Supp. 3d at 885 ("Defendants did not owe Plaintiff a duty to disclose the potential that extremely low levels of BPA may unintentionally be present in the final product.").

With respect to non-fresh and non-regional ingredients, Plaintiff read the packaging prior to purchasing the food, understood there were some non-fresh and non-regional ingredients, and still purchased the food. (SUMF ¶¶ 22, 23, 27, 39.) Like any reasonable consumer, Plaintiff testified that she read the bag and understood that freeze-drying involves a freezing process (*id.* ¶ 22), knew that a Champion diet would include dried meats and freeze-dried ingredients (*id.* ¶ 23), and in particular, that ACANA Meadowlands included dried ingredients and oils. (*Id.* ¶ 27.) Plaintiff also understood that Atlantic mackerel was sourced from the Atlantic Ocean, which she considered to be outside of the region. (*Id.* ¶ 39.) Accordingly, the fact that Champion's diets included non-fresh and non-regional ingredients was not peculiarly within Champion's knowledge and could not have been material to her transaction, or any reasonable consumer who was exposed

to the same messaging on the packages.[17] *See In re Sling Media Slingbox*, 202 F. Supp. 3d at 360 (a "material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product."). Further, the statements on Champion's ACANA packaging at issue does not imply that all of its ingredients are fresh, (SUMF ¶¶ 21-27, 32), and discloses the city, county, state or region whereby main ingredients were sourced. (*Id.* ¶¶ 36-38.) Accordingly, Champion alone did not possess essential or material facts regarding the non-fresh or non-regional ingredients and is entitled to summary judgment on the fraudulent omission and GBL § 349 omission claims. *See Hogan Willig, PLLC v. Kahn*, 145 A.D.3d 1619, 1622 (4th Dept 2016) (affirming summary judgment where there was no "triable issue of fact whether defendant had superior knowledge of essential facts rendering nondisclosure inherently unfair").

Second, there also can be no disclosure requirement because Champion would have no reason to believe that this particular Plaintiff was acting on the basis of any "mistaken knowledge." The undisputed facts reflect that Champion's dog food potentially contained trace levels of heavy metals and BPA, but below any level that would cause harm, similar to many other dog foods. (SUMF ¶¶ 64-68, 71,85-86, 88.); *see also Weaver*, 2019 WL 2774139, at *3 ("*All* pet (and human) foods contain at least some tiny amount of heavy metals."). While many dog foods contain small amounts of heavy metals and BPA, not one manufacturer discloses this on their bags because there is no evidence that such low levels of heavy metals or BPA ever  harmed any dog, in any way even after years of daily use. Thus, as a matter of law, Champion did not have a duty to disclose that its

---

[17] Nor can Plaintiff prove she suffered an injury, as this information was "of no consequence" to her purchasing decision and therefore did not "constitute[] or cause[] Plaintiff[] the type of harm that might qualify as an 'actual injury' within the meaning of GBL § 349." *In re Sling Media Slingbox*, 202 F. Supp. 3d at 360.

dog food could contain heavy metals or BPA.[18] *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 156 (2d Cir. 1995) (even if defendant had 'superior knowledge,' it did not owe plaintiff a duty to disclose because plaintiff could not show that defendant "knew that [plaintiff] was acting in reliance on mistaken knowledge" and "[s]uch knowledge is a prerequisite to a duty to disclose based on superior knowledge").

Because Champion never represented that all ingredients were either "fresh" or "regional," Champion could not have plausibly known that Plaintiff was under the mistaken belief that Champion exclusively uses fresh and regional ingredients such that Champion had a duty to correct such a misunderstanding via a disclosure. Indeed, she even testified that she knew there were non-fresh and non-regional ingredients in the dog food she purchased. (SUMF ¶¶ 22, 23, 27, 39.) And, as multiple courts have already found, Champion's packaging does not plausibly give rise to the inference that all of its ingredients are either fresh or regional when the packaging is viewed in context. *See Song*, 2020 WL 7624861, at *8 ("the Champion packages themselves make clear that not all of the ingredients are fresh."); *Weaver*, 471 F. Supp. 3d at 884 ("[W]hen the dog food packaging is viewed in full, it is clear … that at least several pounds of both types of dog food are not fresh ingredients … [and] because the packaging included statements that provided context to 'regional' and did not state that all ingredients were regional, the 'Regional' statement is not false or misleading"). Summary judgment should be entered against Plaintiff's omission-based claims.

## VI.   CONCLUSION

For the foregoing reasons, Champion asks the Court to grant the Motion and enter summary judgment for Champion.

---

[18] Plaintiff also testified that she did not contact Champion prior to filing this lawsuit. (SUMF ¶ 55.) Therefore, Champion would have no reason to know that she specifically was purchasing food based on mistaken knowledge.

DATED:  April 15, 2021

GREENBERG TRAURIG, LLP

By: */s/ David A. Coulson*
David A. Coulson, Esq. (*pro hac vice*)
Jared R. Kessler, Esq. (*pro hac vice*)
Robert S. Galbo, Esq. (*pro hac vice*)
Elisa H. Baca, Esq. (*pro hac vice*)
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: 305-579-0754
Facsimile: 305-579-0500
Email: coulsond@gtlaw.com
        kesslerj@gtlaw.com
        galbor@gtlaw.com
        bacae@gtlaw.com

Rick L. Shackelford, Esq. (*pro hac vice*)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 310-586-3878
Facsimile: 310-586-7800
Email: shackelfordr@gtlaw.com

Cynthia Neidl, Esq. (513737)
54 State Street
Albany, NY 12207
Telephone: 518-689-1435
Facsimile:  518-689-1499
Email: neidlc@gtlaw.com

*Attorneys for Defendants*
*Champion Petfoods USA Inc. and*
*Champion Petfoods LP*

26