# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHLEEN PARADOWSKI Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP,<br><br>        Defendants. | **Case No. 6:18-cv-01228-LEK-DEP**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ....................................................................................................... 1

II.  ARGUMENT ............................................................................................................... 2

    A.  Predominance is Met ........................................................................................... 2

        1.  The Packaging at Issue Does Not Vary In Any Material Way ............................ 2

        2.  Other Products Plaintiff Purchased Do Not Raise Individual Issues .................. 3

        3.  All Bags At Issue Contain Non-Fresh and Non-Regional Ingredients ................ 4

        4.  Lot-by-Lot Variations Demonstrate CPF's Marketing Claims Are Deceptive ... 5

        5.  Reliance Does Not Raise Individual Issues that Predominate ............................ 8

    B.  Class Members' Damages Are Calculable via Classwide Proof............................... 10

        1.  CPF Misunderstands Plaintiffs' Damages Model............................................. 10

        2.  Statutory Damages Provide an Alternative Classwide Damages Model ........... 11

    C.  Rule 23(b)(2) Class Certification is Appropriate ...................................................... 12

    D.  The Court Should Certify a Rule 23(c)(4) Class ...................................................... 12

III. CONCLUSION.............................................................................................................. 12

CERTIFICATE OF SERVICE ........................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ............................................................................................................. 8

*Ault v. J.M. Smucker Co.*,
   310 F.R.D. 59 (S.D.N.Y. 2015) ......................................................................................... 11

*Belfiore v. Procter & Gamble Co.*,
   2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) ...................................................................... 11

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020) ........................................................................................... 5, 6

*Broomfield v. Craft Brew Alliance, Inc.*,
   2018 WL 5562361 (N.D. Cal. Sept. 25, 2018) ................................................................. 10

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
   2021 WL 355405 (S.D.N.Y. Feb. 2, 2021) ......................................................................... 6

*De LaCour v. Colgate-Palmolive Co.*,
   2021 WL 1590208 (S.D.N.Y. Apr. 23, 2021) ................................................................... 11

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ......................................................................................... 7

*F.T.C. v. Bronson Partners, LLC*,
   564 F. Supp. 2d 119 (D. Conn. 2008) ................................................................................. 5

*Famular v. Whirlpool Corp.*,
   2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019) .................................................................. 11

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ................................................................................................ 4

*Guido v. L'Oreal, USA, Inc.*,
   2013 WL 3353857 (C.D. Cal. July 1, 2013) ..................................................................... 11

*Hicks v. T.L. Cannon Corp.*,
   35 F. Supp. 3d 329 (W.D.N.Y. 2014) ................................................................................. 3

*In re AMLA Litig.*,
   320 F. Supp. 3d 578 (S.D.N.Y. 2018) ............................................................................... 12

*In re Fannie Mae 2008 Sec. Litig.*,
    891 F. Supp. 2d 458 (S.D.N.Y. 2012)..................................................................................5

*In re General Motors LLC Ignition Switch Litig.*,
    407 F. Supp. 3d 212 (S.D.N.Y. 2019)................................................................................10

*In re: Kind LLC "Healthy and All Natural" Litig.*,
    2021 WL 1132147 (S.D.N.Y Mar. 24, 2021) ............................................................ *passim*

*In re Scotts EZ Seed Litig.*,
    2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017)......................................................................10

*In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*,
    2019 WL 2521958 (D.N.J. June 18, 2019)..........................................................................3

*Jacob v. Duane Reade, Inc.*,
    293 F.R.D. 578 (S.D.N.Y. 2013) .......................................................................................12

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017)..................................................................................11, 12

*Mannacio v. LG Elecs. U.S.A., Inc.*,
    2020 WL 4676285 (D. Minn. Aug. 12, 2020) ...................................................................10

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018)...................................................................................1, 2, 4, 6

*Marotto v. Kellogg Co.*,
    415 F. Supp. 3d 476 (S.D.N.Y. 2019)..................................................................................3

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)...........................................................................................8, 9

*O'Neill v. Std. Homeopathic Co.*,
    346 F. Supp. 3d 511 (S.D.N.Y. 2018)................................................................................12

*People ex rel. Spitzer v. Gen. Elec. Co.*,
    302 A.D.2d 314 (N.Y. App. Div. 2003) .............................................................................5

*Price v. L'Oreal USA, Inc.*,
    2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018)...................................................................11

*Reed Paving, Inc. v. Glen Ave. Builders, Inc.*,
    148 A.D.2d 934 (N.Y. App. Div. 1989) ...........................................................................12

*Reitman v. Champion Petfoods USA, Inc.*,
    2019 WL 7169792 (C.D. Cal. Oct. 30, 2019)..................................................................3, 4

*Robinson v. Metro-N. Commuter R.R.*,
 267 F.3d 147 (2d Cir. 2001) .................................................................................................. 7

*Rodriguez v. It's Just Lunch, Int'l.*,
 300 F.R.D. 125 (S.D.N.Y. 2014) ....................................................................................... 8, 9

*Rojas v. Paine*,
 125 A.D.3d 745 (N.Y. App. Div. 2015) ............................................................................... 12

*Singleton v. Fifth Generation, Inc.*,
 2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) ..................................................................... 11

*Solomon v. Bell Atl. Corp.*,
 9 A.D.3d 49 (1st Dep't 2004) ................................................................................................ 3

*Stewart v. Riviana Foods Inc.*,
 2017 WL 4045952 (S.D.N.Y. Sep. 11, 2017) ........................................................................ 4

*W.M.S. Builders v. Newburgh Steel Prods.*,
 289 A.D.2d 567 (N.Y. App. Div. 2001) ............................................................................... 12

*Zeiger v. WellPet LLC*,
 WL 756109 (N.D. Cal. Feb. 26, 2021 ........................................................................ 7, 8, 12

**RULES**

Federal Rule of Civil Procedure 23 ............................................................................................ 1, 12

**I.      INTRODUCTION**

CPF's opposition centers on an implausible depiction of the consumer experience at the time of purchase.[1] This is easily demonstrated through its arguments as to the fresh and regional promises. According to CPF, the consumer must first analyze the ingredient panel and decide whether each ingredient is even capable of being fresh or regional. If so, she must then analyze whether it is realistic for each ingredient to be fresh or regional given *the season* of the purchase and *the location* of CPF's kitchen. The consumer must then scour the package to piece together whether there are any limited disclosures or general context that may inform the fresh or regional quality of each listed ingredient. Even though CPF plasters "fresh" up to 28 times on the package, the consumer must then consider manufacturing practices known only by the industry (like the use of regrinds) before deciding whether the "fresh" promise is misleading. For those who have purchased CPF's *other* products, CPF also expects them to have cataloged the context on *those* labels and apply it to the Dog Food in their hands *even though it is not on the package being purchased*. This sequence of events is too far removed from the real-world experience and borders on the absurd. It also is not the standard upon which consumer protections claims are measured, and CPF does not explain why the Court should be the first to adopt this harsh new standard here.

CPF's other arguments are also contrary to the real-world consumer experience, New York's consumer protection laws, and Rule 23. It argues, without any legal support, that the packaging is not false or misleading because "100%" does not appear on the Dog Food. This is not the law in this Circuit. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 638 (2d Cir. 2018) (it "would validate highly deceptive marketing" if a manufacturer could advertise a characteristic so long as the product contains "an iota" of it). CPF's argument also belies the vast evidence

---

[1] All terms defined in opening brief.

demonstrating it purposely curated the BAFRINO brand identity and highlights it on every bag to induce consumers and drive sales. And here, both a consumer survey and expert opinion show that the packaging is misleading despite the lack of a "100%" representation.

Finally, CPF's argument that a bag-by-bag analysis is necessary fails for several reasons. First, it is undisputed that every Dog Food bag contains heavy metals and some non-fresh and non-regional ingredients. Second, CPF's standard practices permit regular inclusion of other non-fresh, non-regional, and unnatural ingredients. Third, under CPF's erred analysis, consumers would be left at the mercy of its desire or ability to meet its packaging claims. That result would upend the protections afforded through consumer protection laws and product labeling class actions.

## II. ARGUMENT

### A. Predominance is Met

#### 1. *The Packaging at Issue Does Not Vary In Any Material Way*

The packaging of the two diets at issue does not vary in any material way,[2] as evidenced by the few examples of "differences" CPF mustered from the nearly identical bags:

- "Biologically Appropriate" is always described as protein rich and focused on evolution;

- Neither the ingredient panel nor the "meat math" panel ever discloses the inclusion of heavy metals, BPA, non-regional, expired, and re-ground ingredients;

- Tiny print discloses "Half are FRESH or RAW . . . half are DRIED or OILS";[3]

- It discloses only "regional" suppliers from states bordering Kentucky (*e.g.* Ohio/Indiana).

(Exs. 1, 2; Dkt. 134-8 at ¶¶51-52.) The bags have nearly identical "context," they all contain the same Marketing Claims and not a single one discloses the Marketing Omissions. This is similar to

---

[2] Uniformity is met where "all [] products contain some form of allegedly misleading advertising, albeit in slight variations." *Kind Litig.*, 2021 WL 1132147, *10.

[3] It is well-established that consumers need not consult back or side panels "to correct misleading information set forth in large bold type on the front of the box." *Mantikas*, 910 F.3d at 637.

the "pasteurized" claim in *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, where predominance was met because the claim was on every product. 2019 WL 2521958, at *10 (D.N.J. June 18, 2019).[4] Further, in both *Tropicana* and *Marotto v. Kellogg Co.*, 415 F. Supp. 3d 476, 481 (S.D.N.Y. 2019), defendants produced a "multiplicity of labels" to show the variations in the products at issue. CPF did not do so here because none exist.[5] Each proposed Class involves a single product with two labels and no material variations.[6]

2. ***Other Products Plaintiff Purchased Do Not Raise Individual Issues***

Plaintiff seeks to represent narrow Classes. To shoehorn the ruling in *Reitman v. Champion Petfoods USA, Inc.*, 2019 WL 7169792, at *4 n.1 (C.D. Cal. Oct. 30, 2019), *aff'd*, 830 F. App'x 880 (9th Cir. 2020), which involved 23 diets (each of which had at least two labels), CPF argues that context on products *not at issue here* creates individualized issues. This argument should be (and has been) rejected. First, CPF adopts a new standard that would require courts (and juries) to consider packaging across an entire product line (and even other manufacturers' products). This "standard" gives manufacturers free reign to "cure" misleading statements and omissions on one product by simply making disclosures on another product.[7] It would require analyzing labels through the lens of all context across all products ever purchased by a consumer. This is antithetical to governing law. The Second Circuit has already opined that consumers are not expected to look even at the side or back panel of the purchased product *itself* (never mind a different product) "to

---

[4] The misleading statements that did not meet predominance in *Tropicana* were *not* always present on the at least nine variations of packaging at issue. 2019 WL 2521958, **9-10.

[5] Likewise, in *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 55 (1st Dep't 2004), which involved website statements "the record show[ed] that the individual plaintiffs did not all see the same advertisements; some saw no advertisements at all before deciding to become subscribers."

[6] The court has the discretion to redefine the classes to include only one label each (for a total of four classes). *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 357 (W.D.N.Y. 2014).

[7] This "roadmap to avoid class actions" has been rejected. *In re: Kind LLC "Healthy and All Natural" Litig. ("Kind Litig.")*, 2021 WL 1132147, at *12 (S.D.N.Y Mar. 24, 2021).

3

correct misleading information set forth in large bold type on the front of the box." *Mantikas*, 910 F.3d at 637. This argument's credibility is best evidenced by the number of cases CPF cites to for support: zero. The Court should not be the first to adopt this new unattainable standard.

CPF's argument resembles that of the plaintiff in *Stewart v. Riviana Foods Inc.*, who alleged the defendant misled her by selling "only 12 ounces of [] pasta in the same iconic boxes traditionally sized and priced to contain 16 ounces." 2017 WL 4045952, at *1 (S.D.N.Y. Sep. 11, 2017). The court found that a consumer who expects to receive a certain product characteristic "because she has purchased different [] products in similarly-sized boxes, is not reasonable." *Id.* at *10. The same is true of CPF's expectation that statements read across an entire product line are applied to the purchase at hand. That is unreasonable and not the standard. The inquiry is cabined to whether these four labels are misleading. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("The primary evidence in a consumer-fraud case arising out of [] false advertising is [] the advertising itself."). And it asks "a binary question." *Kind Litig.*, 2021 WL 1132147, *9.

### 3. *All Bags At Issue Contain Non-Fresh and Non-Regional Ingredients*

CPF skirts around its use of certain frozen and international ingredients because that uniform practice is dispositive of its lot-by-lot argument. CPF does not contest that it always uses frozen rainbow trout and catfish in the Meadowland diet (Ex. 2), nor that it uses freeze-dried chicken and turkey liver in both diets. (Exs. 1, 2.) CPF admits that it uses a mixture of *both* fresh and frozen chicken in the Free-Run Poultry diet, (Dkt. 134-8 at ¶30), and does not contest that it plate freezes deboned chicken and chicken giblets, (Ex. 9), ingredients used in both diets. (Exs. 1, 2.)[8] It also admits that it sources turmeric (an ingredient in both diets) from India.[9] (Exs. 1, 2, 18.)

---

[8] CPF recognizes that using "fresh" when there is a mixture of both fresh and frozen will "definitely draw regulatory attention." (Ex. 10 at -89.)

[9] Turmeric is grown domestically. *Compare* Dkt. 134-8 at ¶54 *with* Exs. 55, 56. Further, the inquiry here is not whether the ingredients *can* be regional, but whether CPF said they *were* regional.

4

Finally, CPF does not contest that (1) it purchased less than 3% of its fresh chicken from the featured farmer on the 2016-2017 bags (Ex. 21); and (2) its featured farmer on the 2018 bags is actually from Tyson, Inc. (Exs. 22-23). These practices are why CPF questioned its ability to continue using "regional" on its bags. (Ex. 25 at -07.)[10] This alone provides sufficient uniformity for class certification. *Kind Litig.*, 2021 WL 1132147, *61 ("If a product contains a single [non-conforming ingredient] the label is incorrect.").

### 4. *Lot-by-Lot Variations Demonstrate CPF's Marketing Claims Are Deceptive*

CPF's "lot-by-lot" argument is, ultimately, not a rebuttal of predominance or "an availing defense in light of the evident capacity of the representations at issue to mislead." *People ex rel. Spitzer v. Gen. Elec. Co.*, 302 A.D.2d 314, 315 (N.Y. App. Div. 2003). "[W]here an advertisement conveys more than one meaning, one of which is false, the advertiser is liable for the misleading variation[.]" *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th Cir. 2020). There is no requirement that Plaintiff prove literal falsity, *Spitzer*, 302 A.D.2d at 315, because "even if [CPF's] statements were literally true [it] can still be found liable for the overall misleading impression [the] statements created." *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 476 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013); *see also F.T.C. v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 130 (D. Conn. 2008) ("one true statement, in the presence of a mass of false and misleading statements, does not render an otherwise misleading advertisement non-misleading.").

Thus, CPF's admission that its food is *sometimes* Biologically Appropriate and *sometimes* made with fresh, regional, and natural ingredients does not save it from liability or preclude class certification. The Second Circuit has closed the loophole:

> [T]he rule that Defendant [proffers]—that, as a matter of law, it is not misleading

---

[10] This document is common evidence of CPF's intent to mislead and serves as an admission of what the reasonable consumer believes "regional" to mean. That it is dated around the same time Plaintiff stopped purchasing the Dog Food is irrelevant.

5

> to state that a product is made with a specified ingredient if that ingredient is in fact present—would validate highly deceptive advertising and labeling. Such a rule would permit Defendant to lead consumers to believe its Cheez-Its were made of whole grain so long as the crackers contained an iota of whole grain, along with 99.999% white flour. Such a rule would validate highly deceptive marketing.

*Mantikas*, 910 F.3d at 638; *see also Campbell v. Whole Foods Mkt. Grp., Inc.*, 2021 WL 355405, at *7 n.7 (S.D.N.Y. Feb. 2, 2021) ("[T]hat position—so long as there is any of the ingredient in the product, the advertisement is not deceptive—is simply not sustainable in this Circuit after *Mantikas*.").[11] A reasonable consumer is not expected to examine context on packaging "to correct misleading information" on the front when the context does "not adequately dispel the inference communicated by the front of the package." *Mantikas*, 910 F.3d at 637.

Here, nothing on the packaging discloses heavy metals, BPA, or non-fresh and non-regional ingredients (including regrinds). Common evidence shows the packaging is misleading in a material way even though CPF does not make "100%" guarantees. Indeed, CPF admits it uses non-fresh, non-regional, non-biologically appropriate ingredients as a standard practice:

- "The ratio of fresh to raw chicken [and fish] ingredients [and fruits and vegetables] varied, depending on a number of factors, including the time of year and supply." (Dkt. 134-8 ¶¶30, 33, 35.)[12]

- "Ingredients that are not highlighted by icons, Meat Math, or specific language, but instead are only listed on the ingredient panel, are often not fresh or regional ingredients." (*Id.* ¶27.)

---

[11] CPF's argument that it never defined "regional" is unavailing. *See Bell*, 982 F.3d at 476 ("Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities[.]"). It is also contradicted by Plaintiff's expert opinion finding that the Marketing Claims "convey the message to consumers that all of the products are [] made with fresh ingredients sourced from local, trusted suppliers[,]" and survey evidence demonstrating 77% of respondents did not expect imported ingredients and expected ingredients to be sourced from the region where the food was made unless specifically stated otherwise. (Ex. 8 ¶202; Ex. 52 at Fig. 10.) "Generalized proof as to what message the packaging conveys will satisfy the inquiry" of whether the reasonable consumer would be misled by the packaging. *Kind Litig.*, 2021 WL 1132147, *10.
[12] CPF's former CEO stated that less than half of the meat it received in 2013 arrives fresh, "counter to our marketing message." Ex. 57.

- The introduction of regrinds is standard practice, and "[p]roduction runs of a number of Champion's diets sometimes include regrinds." (*Id*. ¶37.) These regrinds are "out of spec" and sometimes contain "pathogens or bacteria, such as salmonella." (*Id*. ¶38.)

- CPF employs the standard practice of sight and smell tests to determine if ingredients are past their shelf life. (*Id*. ¶44.)

- "[S]ometimes its regional suppliers cannot meet Champion's demand, or the highest quality product must be sourced from a location that is geographically distant from Champion's kitchens." (*Id*. ¶53.)

These admissions of manufacturing practices present common questions of fact regarding the deceptiveness of the Marketing Claims and Omissions because the packaging never discloses *any* of these practices.[13] These are not merit issues that must be decided now. Indeed, these "seasonal," "sometimes," and "standard" practices prove the deceptiveness of the Marketing Claims and Omissions. CPF's own admission shows a consumer cannot read the Dog Food packaging and determine whether it is misleading. Instead, a consumer must know which of CPF's kitchens made the Dog Food; which ingredients are seasonal when CPF manufactured that particular lot; whether fresh chicken, fish, and produce were available on the day that specific lot was run; and whether there were regrinds (contaminated or not) used as a filler on that particular day. Yet, CPF repeatedly claims that its food is "Biologically Appropriate," and made with fresh, regional, and natural ingredients on every bag. Ex. 58 (claims repeated 9-28 times). This is common liability evidence. Further, whether these practices are standard or the exception, "the changes within each formula type are relatively minor, occurred over time in an essentially uniform way, and can be addressed class-wide." *Zeiger v. WellPet LLC*, WL 756109, at *29 (N.D. Cal. Feb. 26, 2021); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) (class certified where

---

[13] CPF argues that the evidence does not amount to class-wide proof because it is only occasional and anecdotal, but even if that were true (it is not) it is irrelevant. *See Robinson v. Metro-N. Commuter R.R.*, 267 F.3d 147, 159 (2d Cir. 2001) (citation omitted). ("Neither statistical nor anecdotal evidence is automatically entitled to reverence to the exclusion of the other.").

7

defendant only sometimes used the undisclosed ingredient).

Since it is undisputed that all the Dog Food contains heavy metals, CPF pivots, arguing heavy metal levels must be analyzed in each bag because they are ubiquitous in the environment.[14] This misses the point. "Merely because a substance is 'naturally occurring' or impossible to entirely remove from the food [] does not necessarily mean that it is safe in any quantity, nor does it necessarily mean there is not a duty to disclose it." *Zeiger*, 2021 WL 756109, at *16. Further, "[c]onclusions about safety of heavy metals cannot be drawn from incomplete data," and "[s]ingle tests done on small samples of dog food do not tell the entire story of bioaccumulation." (Ex. 59 at 25-26.) "All heavy metals…have their toxic effects on living organism," and "[t]he bioaccumulation of toxic metals can occur in the body and food chain." (*Id*. at 14.) "The issue is not that any single dose is harmful, it is that ingesting these substances [] bioaccumulate to unsafe levels." *Zeiger*, 2021 WL 756109, at *6. The same is true for BPA. (Ex. 59 at 20-22, 28-29.) CPF's admission that it "tests some ingredients more than others," (Dkt. 134-14 ¶¶14, 16), is material information CPF omits from *all* packaging and serves as common liability evidence.

5. ***Reliance Does Not Raise Individual Issues that Predominate***

Reliance does not preclude Plaintiff's common law fraud and omission claims. Plaintiff is not required "to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). And "there is no blanket rule in the Second Circuit that a fraud class action cannot be certified when individual reliance will be an issue." *Rodriguez v. It's Just Lunch, Int'l.*, 300 F.R.D. 125, 139 (S.D.N.Y. 2014). CPF relies on *Moore v. PaineWebber, Inc.*, where the alleged varied misrepresentations were conveyed orally

---

[14] The lot-by-lot argument has no applicability to the "Delivering Nutrients Naturally" claim because CPF never discloses BPA on its bags. Its argument that consumers who bought pre-2016 diets should have "no problem" with the synthetic found in the Dog Food ignores that Plaintiff's claim is based on the presence of BPA and not the single disclosed synthetic.

8

through hundreds of brokers. 306 F.3d 1247, 1253 (2d Cir. 2002). But the Second Circuit explicitly distinguished these claims from those based on "uniform misrepresentations made to all members of the class." *Id.* Such uniform statements may be "appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof." *Id*. Here, the Marketing Claims are on all packaging, made directly to consumers, and not filtered through third parties. Moreover, they are so fundamental to the purchase of the Dog Food that reliance may be appropriately inferred from common proof. *Rodriguez*, 300 F.R.D. at 139; (Dkt. 108-1 at 20).

CPF attempts to show that individualized issues predominate because plaintiffs in other related cases interpreted terms like "local" differently or had varying knowledge about mercury in fish. (Dkt. 134 at 24 n.14.) But a closer look at their testimony confirms these consumers interpreted the packaging consistent with Plaintiff's allegations and the consumer survey results.[15] These results parallel Dr. Silverman's opinion that "[c]onsumers are positively influenced by the [Marketing Claims] that appear on [CPF]'s packaging when making their purchasing decision at the store as well as when they are exposed to the statements at home." (Ex. 8 at ¶32(f).) In fact, CPF "expect[s] consumers to rely on these 'ads,' which prompt purchase." (*Id*. ¶92.) This proof is what *PaineWebber* contemplates, so reliance does not bar class certification here.

---

[15] Plaintiff's survey found that 73-88% of respondents interpret the Marketing Claims consistent with her allegations. (Ex. 52 at Fig. 9-12.) Other consumers suing CPF did not know CPF's dog food contained heavy metals. (Ex. 60 at 110:15-20; Ex. 61 at 115:24-116:16; Ex. 62 at 65:1-4; Ex. 63 at 17:2-7; Ex. 64 at 150:7-10.) They have understandings of the word "fresh" and "regional" comparable to the survey respondents. (*See*, *e.g.*, Ex. 60 at 40:21-41:2 ("Not spoiled, fresh and ready for consumption"); *id.* at 53:1-8 ("I assumed that they got it fresh and freeze-dried it."); Ex. 65 at 108:7-11 (expired ingredients and regrinds are not fresh); Ex. 62 at 83:9-13 (same); Ex. 64 at 134:3-15 (regional means local and "not another country"); Ex. 61 at 97:25-98:4 (same); Ex. 66 at 119:23-120:2 ("regional" means "the state where the kitchen is located"); Ex. 61 at 98:6-11 ("fresh" is "tied into the word 'local'" and means "the time from slaughter to processing is not lengthy"); Ex. 67 at 169:22-24 (heavy metals are not fresh); Ex. 68 at 103:8-10 (heavy metals are not biologically appropriate); Ex. 60 at 52:3-12 (Marketing Claims meant 100%); Ex. 68 at 19:12-13 ("Everything was sourced regionally."); Ex. 63, at 56:21-57:4 (same); *id*. at 93:5-10 (same).

### B. Class Members' Damages Are Calculable via Classwide Proof

#### *1. CPF Misunderstands Plaintiffs' Damages Model*

CPF incorrectly claims that Boedeker's model ignores supply side factors in the but-for-world. But Boedeker accounted for supply-side factors by incorporating actual market prices and market volume in the damage calculations.[16] (Ex. 52 at ¶¶50-52, 118-119.) He properly assumed the supplied volume in the but-for-world is the same as the actual world. (*Id.* at ¶¶36-40.)[17] As *In re General Motors LLC Ignition Switch Litig.* recognizes, "[i]n a classic mislabeling case, [] that makes sense." 407 F. Supp. 3d 212, 238-39 (S.D.N.Y. 2019) (noting "[a]ccounting for supply-side factors is not so simple" when "dangerous [vehicle] defects" are at issue); *see also Mannacio v. LG Elecs. U.S.A., Inc.,* 2020 WL 4676285, at *4 (D. Minn. Aug. 12, 2020) ("[C]onjoint analyses 'adequately account for supply-side factors' when '(1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.'"). Considering the supply fixed in a mislabeling case, as Boedeker did, has been widely accepted. *See Broomfield v. Craft Brew Alliance, Inc.*, 2018 WL 5562361, at *56-58 (N.D. Cal. Sept. 25, 2018) (collecting cases).[18]

CPF also argues Boedeker imputes "a negative value" on the Dog Food and "overstates the damages by calculating both misrepresentations and omissions." (Dkt. 134 at 27.) But Boedeker based his model on the price premium for the Dog Food where he isolates each misrepresentation and omission. The model assumes a product has a minimum value and misrepresentations or

---

[16] Boedeker converted retail revenue data to determine retail sales volume, Ex. 52 at ¶¶20-22, because CPF did not produce actual unit sales numbers.

[17] CPF's expert also testified that data necessary to perform the kind of supply-side analysis CPF seeks may not be available. (Ex. 70 at 80:14-81:7.)

[18] CPF's supply side critique "is appropriate for cross-examination" and not a basis to deny class certification. *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *9 (S.D.N.Y. Aug. 8, 2017).

omissions can reduce the value *to* that floor (not below). Boedeker calculated these damages for both misrepresentations and omissions, but he did not propose adding these calculations together. (Ex. 69 at 102:12-18.) The calculated losses are in line with the price difference between the Dog Food and non-premium brands (which do not make the claims CPF makes). (Ex. 52 at ¶183.)[19] Boedeker's model properly measures the price premium attributed to the misrepresentations and omissions compared to non-premium dog food and is "well-established" in labeling cases. *Price v. L'Oreal USA, Inc.*, 2018 WL 3869896, at *9-10 (S.D.N.Y. Aug. 15, 2018); *see also De LaCour v. Colgate-Palmolive Co.*, 2021 WL 1590208, at *14-15 (S.D.N.Y. Apr. 23, 2021); *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *11-12 (S.D.N.Y. Mar. 19, 2019).[20]

### 2. *Statutory Damages Provide an Alternative Classwide Damages Model*

Under GBL § 349(h), Plaintiff and class members may seek "actual damages or fifty dollars, whichever is greater."[21] (Dkt. 76; ¶172.) Courts have accepted statutory damages as a methodology at class certification. *Famular*, 2019 WL 1254882, at *11–12; *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 550–51 (E.D.N.Y. 2017). "[N]o expert testimony demonstrating the existence of a measurable impact on market price is necessary to award [statutory damages] relief to [a] New York class." *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013). Statutory damages may amount to a full refund for the smaller Dog Food bags, but Plaintiff is "entitled to the statutory minimum, which may well be greater than [her] actual damages."

---

[19] Boedeker also testified that the results could only be added if the misrepresentation and the omission results are independent, which he had not yet determined. (Ex. 69 at 101:20-102:18.)

[20] CPF's other cases are inapposite. The model in *Ault v. J.M. Smucker Co.* pointed "to no alternate product whose market price could be used as a yardstick to determine what [p]laintiff would have paid, but for the [] misrepresentation." 310 F.R.D. 59, 68 (S.D.N.Y. 2015). Here, Boedeker used a non-premium brand of dog food as a benchmark. (Ex. 52 at ¶166.) In *Singleton v. Fifth Generation, Inc.*, the model relied on "two [] hypothetical products," 2017 WL 5001444, at *21 (N.D.N.Y. Sept. 27, 2017), but Boedeker's model evaluates the brand at issue here. (Ex. 52 at ¶129.)

[21] Actual damages include "the benefit of the bargain" and "premium price paid." *Belfiore v. Procter & Gamble Co.*, 2015 WL 5781541, at *40 (E.D.N.Y. Oct. 5, 2015).

*O'Neill v. Std. Homeopathic Co.*, 346 F. Supp. 3d 511, 523 (S.D.N.Y. 2018); *In re AMLA Litig.*, 320 F. Supp. 3d 578, 591-92 (S.D.N.Y. 2018).[22]

### C. Rule 23(b)(2) Class Certification is Appropriate

Injunctive relief is essential to protect consumers prospectively. *Zeiger*, 2021 WL 756109, at *31. CPF contends that Plaintiff cannot represent a Rule 23(b)(2) class because she no longer purchases the Dog Food. This argument is both legally incorrect and contrary to the remedial policy of consumer protection laws. *See Kurtz*, 321 F.R.D. at 542 (under CPF's reasoning, "injunctive relief would never be available in false advertising cases, a wholly unrealistic result."). CPF also asserts, without explanation, that class members would need different injunctions, but a single injunction prohibiting the Marketing Claims is a uniform class-wide remedy.

### D. The Court Should Certify a Rule 23(c)(4) Class

Rule 23(c)(4) certification would materially advance the litigation because resolving individual class members' damages is trivial where "witness[es] ha[ve] knowledge of the actual costs" and "proof of damages may be based solely on oral testimony[.]" *Rojas v. Paine*, 125 A.D.3d 745, 747 (N.Y. App. Div. 2015).[23] Also, class members can seek statutory damages, eliminating the need for expert or significant fact discovery. The disposition of the litigation as a whole would be materially advanced because damages could be decided in a single hearing. *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013), *aff'd* 602 Fed. App'x 3 (2d Cir. 2015).

### III. CONCLUSION

The Court should grant Plaintiff's motion for class certification.

---

[22] The class period and damages properly extend to the present because CPF's conduct is ongoing. CPF's argument to the contrary (Dkt. 134 at 11 n.5) would guarantee that no class could seek relief for ongoing fraud because a class period extending to "present" would have to include a class representative who continued to purchase the product in question even *after* filing the action.

[23] *See also W.M.S. Builders v. Newburgh Steel Prods.*, 289 A.D.2d 567, 567 (N.Y. App. Div. 2001); *Reed Paving, Inc. v. Glen Ave. Builders, Inc.*, 148 A.D.2d 934, 935 (N.Y. App. Div. 1989).

Dated: May 14, 2021   LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By: */s/ Rebecca A. Peterson*
ROBERT K. SHELQUIST, Pro Hac Vice
REBECCA A. PETERSON, Pro Hac Vice
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
 rkshelquist@locklaw.com

LITE DEPALMA GREENBERG, LLC
JOSEPH J. DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail: jdepalma@litedepalma.com
 scruzhodge@litedepalma.com

WEXLER WALLACE LLP
KENNETH A. WEXLER
KARA A. ELGERSMA
MICHELLE PERKOVIC
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
Fax: (312) 346-0022
Email: kaw@wexlerwallace.com
 kae@wexlerwallace.com
 mp@wexlerwallace.com

WEXLER WALLACE LLP
MARK T. TAMBLYN, Pro Hac Vice
333 University Avenue, Suite 200
Sacramento, CA 95825
Tel: (916) 565-7692
Email: mjt@wexlerwallace.com

        ROBBINS LLP
        KEVIN A. SEELY (199982)
        5040 Shoreham Place
        San Diego, CA 92122
        Telephone: (619) 525-3990
        Facsimile: (619) 525-3991
        E-mail: kseely@robbinsllp.com

        GUSTAFSON GLUEK, PLLC
        DANIEL E. GUSTAFSON, Pro Hac Vice
        Canadian Pacific Plaza
        120 South 6th Street, Suite 2600
        Minneapolis, MN 55402
        Telephone: (612) 333-8844
        Facsimile: (612) 339-6622
        E-mail: dgustafson@gustafsongluek.com

        CUNEO GILBERT & LADUCA, LLP
        CHARLES J. LADUCA
        KATHERINE VAN DYCK
        4725 Wisconsin Ave NW, Suite 200
        Washington, DC 20016
        Telephone: 202-789-3960
        Facsimile: 202-789-1813
        E-mail: kvandyck@cuneolaw.com
           charles@cuneolaw.com

        **Counsel for Plaintiffs**


### CERTIFICATE OF SERVICE

  I, Rebecca A. Peterson, hereby certify that on May 14, 2021, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


        */s/ Rebecca A. Peterson*
        Rebecca A. Peterson